ROBERT OLIVER, THE BANK OF THE UNITED STATES, AND THE UNION BANK OF MARYLAND, ASSIGNEES OF SMITH AND BUCHANAN, HOLLINS AND M'BLAIR, AND JOHN S. STYLES, EXECUTOR OF GEORGE STYLES, APPELLANTS V. JAMES ALEXANDER AND SEVENTY-SEVEN OTHERS, SEAMEN OF THE SHIP WARREN, APPELLEES.

On proceedings under libels in the district and circuit courts of the United States of the district of Maryland, claiming seamen's wages from the ship Warren and her freight, upon which, in the circuit court a general decree, pro forma, against the libellants was entered, for the purpose of an appeal to this court: a decree was here made, by which thirty-two thousand eight hundred and seventy-two dollars and thirty cents were adjudged to be due to the libellants from the respondents, as part of their wages, to be paid to them pro rata; and by the mandate of this court, the circuit court was ordered to ascertain the sums due, respectively, to each of the libellants. This was done: and on the report of a commission, fixing the several sums so due, a separate decree was entered in the circuit court for the sum so found due to each libellant respectively. None of the sums decreed to be due amounted to one thousand dollars. The amount of the several sums adjudged to be due by the several separate decrees, was thirty-two thousand dollars and upwards. From these separate decrees the respondents in the circuit court prayed an appeal to this court; and gave a several appeal bond upon the appeal from each decree, as well as a joint appeal bond for the whole. The appeal was dismissed, upon the ground that the sum in controversy in each case was less than two thousand dollars.

This is a case of wages, in which there is necessarily a several and distinct contract with each seaman for the voyage, at his own rate of wages; and though he may sign the same shipping paper, no one is understood to contract jointly with, or to incur responsibility for any other.

The shipping articles constitute a several contract with each seaman to all intents and purposes, and are so contemplated by the act of congress for the government and regulation of seamen in the merchant service: and have been so practically interpreted in courts of justice, as well as by merchants and mariners in all commercial nations in modern times

It is well known that every seaman has a right to sue severally for his own wages in the courts of common law, and that a joint action cannot be maintained in such courts by any number of seamen for wages accruing under the same shipping articles for the same voyage. The reason is, that the common law will not tolerate a joint action, except by persons who have a joint interest; if the cause of action is several, the suit must be several.

But a different course of practice has prevailed for ages in the court of admiralty, in regard to suits for seamen's wages. It is a special favour, and a peculiar privilege allowed to them, and to them only; and is confined strictly to demands for wages.

Although the libel is in its form joint, the contract is always treated in the admiralty according to the truth of the case, as a several distinct contract with each

seaman. Each is to stand or fall by the merits of his own claim, and is un-affected by that of his co-libellants.

The defence which is good against one seaman, may be wholly inapplicable to another. One may have been paid; another may not have performed the service; and another may have forfeited in whole or in part his claim to wages. But no decree whatever, which is made in regard to such claims, can possibly avail to the prejudice of the merits of others, which do not fall within the same predicament. And wherever from the nature of the defence it is inapplicable to the whole crew, the answer invariably contains separate averments, and is applied to each claim, according to its own peculiar circumstances.

The decree follows the same rule, and assigns to each seaman severally the amount to which he is entitled, and dismisses the libel as to those and those only who have maintained no right to the interposition of the court in their favour.

The whole proceeding, though it assumes the form of a joint suit, is in reality a mere joinder of distinct causes of action by distinct parties, growing out of the same contract; and bears some analogy to the known practice at common law, of consolidating actions founded on the same policy of insurance. The act of congress adopts and sanctions the practice.

One seaman cannot appeal from a decree made in regard to the claim of another; for he has no interest in it, and cannot be aggrieved by it.

It is very clear that no seaman can appeal from the district to the circuit court, unless his own claim exceeds fifty dollars; nor from the circuit to the supreme court unless his claim exceeds two thousand dollars. And the same rule applies to the owners or other respondents, who are not at liberty to consolidate the distinct demands of each seaman into an aggregate, thus making the claims of the whole the matter in dispute; but they can appeal only in regard to the demand of a seaman which exceeds the sum required by law for that purpose, as a distinct matter in dispute.

APPEAL from the circuit court of the United States for the district of Maryland.

Mr. Hoffman, for the appellees, moved to dismiss the appeal for want of jurisdiction; the sum in controversy between the appellants and the individual appellees not being sufficient to sustain the appeal.

The motion was argued by Mr Wirt and Mr Taney for the appellants; and by Mr Hoffman for the appellees.

Mr Justice STORY delivered the opinion of the Court.

This is an appeal from certain decrees of the circuit court of the district of Maryland, rendered in pursuance of the mandate of this court when the same cause was formerly before us; the report of which will be found in 5 Peters's Rep. 675, et seq.

After the cause was remanded, the circuit court referred it to a commissioner to ascertain and report to the court the sums respectively due to each of the officers and seamen, who were libellants for their wages, and interest thereon. In conformity with this order of reference, the commissioner made reports of the amount so due to each of the libellants then before the court; and thereupon the court, after confirming the second and final report of the commissioner, proceeded to enter a separate decree for each libellant for the amount so found due to him; and to apportion, pro rata, the payment of the same out of the funds in the hands of Robert Oliver and others, the assignees in whose hands the funds were attached: and to decree the deficit to be paid by the owners of the ship Warren. The sums so decreed to the libellants, respectively, in no case exceeded nine hundred dollars, and most of them fell short of five hundred dollars. From the separate decrees so rendered, the assignees prayed an appeal to this court, and gave a several appeal bond, upon the appeal from each decree; as well as a joint appeal bond for the whole. Under these circumstances a motion has been made to dismiss the appeal, upon the ground that the sum in controversy in each decree is less than two thousand dollars; and as such, is insufficient to give this court appellate jurisdiction. The motion is resisted upon the other side, upon the ground that the aggregate in controversy, under the whole of the decrees taken together, greatly exceeds that value.

The question is one of great practical importance; but, in our judgment, not of any intrinsic difficulty. The present is a case of seamen's wages, in which there is necessarily a several and distinct contract with each seaman, for the voyage, at his own rate of wages; and though all may sign the same shipping paper, no one is understood to contract jointly with, or to incur responsibility for any of the others. The shipping articles constitute a several contract with each seaman to all intents and purposes; and are so contemplated by the act of congress for the government and regulation of seamen in the merchants' service; act of 1790, chap. 29; and have been so practically interpreted by courts of justice, as well as by merchants and mariners, in all commercial nations in modern times. It is well known that every seaman has a right to sue severally

for his own wages in the courts of common law; and that a joint action cannot be maintained in such courts by any number of the seamen, for wages accruing under the same shipping articles for the same voyage. The reason is, that the common law will not tolerate a joint action, except by persons who have a joint interest, and upon a joint contract. If the cause of action is several, the suit must be several also. But a different course of practice has prevailed for ages in the court of admiralty, in regard to suits for seamen's wages. It is a special favour, and a peculiar privilege allowed to them, and to them only; and is confined strictly to demands for wages. The reason upon which this privilege is founded, is equally wise and humane: it is to save the parties from oppressive costs and expenses, and to enable speedy justice to be administered to all who stand in a similar predicament; in the expressive language of the maritime law, velis levatis. And the benefit is equally as great to the ship owner as to the seamen; though the burthen would otherwise fall upon the latter, from their general improvidence and poverty, with a far heavier weight. A joint libel may therefore always be filed in the admiralty by all the seamen who claim wages for services rendered in the same voyage, under the same shipping articles. But although the libel is thus in form joint, the contract is always treated in the admiralty according to the truth of the case, as a several and distinct contract with each seaman. Each is to stand or fall by the merits of his own claim, and is unaffected by those of his co-libellants. The defence which is good against one seaman, may be wholly inapplicable to another. One may have been paid; another may not have performed the service; and another may have forfeited in whole or in part his claim to wages. But no decree whatsoever, which is made in regard to such claim, can possibly avail to the prejudice of the merits of others, which do not fall within the same predicament. And wherever, from the nature of the defence, it is inapplicable to the whole crew, the answer invariably contains separate averments; and is applied to each claim according to its own peculiar circumstances. The decree follows the same rule, and assigns to each seaman severally the amount to which he is entitled; and dismisses the libel as to those, and those only, who have maintained no right to the interposition of the

court in their favour. · The whole proceeding, therefore, from the beginning to the end of the suit, though it assumes the form of a joint suit; is in reality a mere joinder of distinct causes of action by distinct parties, growing out of the same contract,.and bears some analogy to the known practice at the common law, of consolidating actions against different under-writers, founded upon the same policy of insurance. Be this as it may, it is the established practice of the admiralty. The act of congress already referred to, adopts and sanctions the practice; and it enacts that in proceedings in rem against the ship for mariners' wages, "all the seamen or mariners, having cause of complaint of the like kind against the same ship or vessel, shall be joined as complainants." Act of 1790, ch. 29, sect. 6. It thus converts what by the admiralty law is a privilege into a positive obligation, where the seamen commence a suit at the same time in the same court, by a proceeding in rem for their wages. And it further directs, that "the suit shall be proceeded on in the said court, and final judgment be given, according to the course of admiralty courts in such cases used." Act of 1790, ch. 29, sect. 6.

From this summary view of the nature and operation of the proceedings in the admiralty in cases of joint libels for wages, it is obvious that the claim of each seaman is distinct and several; and the decree upon each claim is in like manner distinct and several. One seaman cannot appeal from the decree made in regard to the claim of another; for he has no interest in it, and cannot be aggrieved by it. The controversy, so far as he is concerned, is confined solely to his own claim; and the matter of dispute between him and the owners, or other respondents, is the sum or value of his own claim, without any reference to the claims of others. It is very clear, therefore, that no seaman can appeal from the district court to the circuit court, unless his own claim exceeds fifty dollars; nor from the circuit court to the Supreme Court, unless his claim exceeds two thousand dollars. And the same rule applies to the owners or other respondents, who are not at liberty to consolidate the distinct demands of each seaman into an aggregate, thus making the claims of the whole the matter in dispute; but they can appeal only in regard to the demand of a seaman which exceeds the sum required by law for that purpose, as a distinct

matter in dispute. If the law were otherwise, it would operate in a most unjust and oppressive manner: for then the seamen would be compellable to file a joint libel; and if any controversy existed as to the claim of a single seaman, all the others would be compellable to be dragged before the appellate tribunals, and incur enormous expenses; even when their own rights and claims were beyond all controversy, and in truth were not controverted. The form of proceeding would thus be made an instrument to subvert the very object for which it was instituted.

But it has been argued, that this court formerly entertained jurisdiction of this very cause upon an appeal by the seamen, and passed a decree in their favour; and that the present appeal is to the erroneous proceedings of the circuit court in carrying into effect that decree: and if the seamen may appeal, the original respondents may appeal also. It is true that the appeal was taken by the seamen, and jurisdiction entertained by this court in the manner stated at the bar; but a moment's attention to the state of facts and posture of the case at that time, will show that the conclusion now attempted to be drawn from them is wholly unsupported. There was nothing then upon the record to show what were the amounts respectively claimed by, and due to the seamen. The decrees, both in the district court, and in the circuit court, were, by the consent of the parties, pro forma, dismissing the libel as to all the libellants, without any inquiry into or ascertainment of the claim of any one of them: and this dismissal was for the avowed purpose of taking an appeal to this court, in order to settle the only real controversy between the parties to the appeal; viz. whether the funds in the hands of the assignees were liable to the claims of the seamen in point of law. Such a proceeding, assented to by all the parties in interest, necessarily admitted that the sums in controversy between the parties were sufficient to found the appellate jurisdiction of this court. The argument at the bar proceeded upon this implied admission; and there was nothing in the record before the court that contradicted the admission. It was not possible for the courts, therefore, to know what was due or claimed by each seaman; and though consent cannot give jurisdiction to this court by way of appeal, where the matter in dispute is less than two

thousand dollars; yet an admission of a sufficient value by the parties is presumed to be correct, where the record does not establish the contrary.   5 Peters's Rep.

In looking into the original proceedings, which are not, indeed, now before us, except for incidental purposes, but only such as have been consequent upon the mandate, it appears that the original libel was by Shepperd alone; that by subsequent amendments other libellants were added; that in the year 1819 another amended libel was filed, embracing all the libellants, and asserting claims on their part to wages in the aggregate to the amount of thirty-one thousand dollars; and that subsequently, in December 1825, another amended libel or petition was filed in behalf of the libellants, making the assignees parties, and making a positive claim for interest also upon the amount of their wages.   It was upon the libels thus amended and filed, that the decree of this court, as well as those of the court below, were founded.   And the last asserts, on the part of one of the libellants (Stephen Cassin), a claim for three thousand four hundred and seventy-six dollars and fifty-one cents, leaving the claims of the others in the most general form, with no averments ascertaining the amounts which were then respectively demanded by them.   Indeed, the very loose and inartificial structure of all the libels, could not escape observation; and might, in earlier stages of the cause, have been open to objection for the want of due certainty and precision, if any exceptions had been specially promoted on behalf of the respondents: but as none were made, there was an implied waiver of all imperfections of this sort. This court, in its decree, affirmed the right of the seamen to their wages, and directed a separate and several decree to be entered for the amount due to each libellant respectively; as soon as the same should be ascertained by a commissioner. So that the decree itself severed the claims of the libellants in all future proceedings in the cause; as in truth these claims ought to have been severally propounded in the original libel. It is manifest, then, that each libellant has no joint interest in the claim of any other; and that each is in its nature and character distinct and independent: and the amount in controversy being now ascertained by a several decree, that constitutes, in regard to the respondents, the sole matter in dispute

between them, and the respective libellants.   Neither party can, then, claim an appeal to this court, in regard to the claim of any libellant, unless that claim exceeds two thousand dollars.   The case is not distinguishable in principle from that of an information of seizure, or a libel on a capture as prize, where various claims are interposed for different portions of the property by persons claiming the same by distinct and independent titles.   In such a case, though the original libel is against the whole property jointly, yet it is severed by the several claims; and no appeal lies by either party, unless in regard to a claim exceeding the sum of two thousand dollars in value. This has been the long and settled practice in the admiralty courts of our country.

Upon the whole, it is the opinion of this court, that for the want of jurisdiction the present appeal must be dismissed; no one of the decrees in the circuit court involving a matter in dispute sufficient in value to justify the exercise of the appellate authority of this court.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Maryland, and was argued by counsel; on consideration whereof, it is the opinion of this Court, that for the want of jurisdiction the present appeal must be dismissed; none of the decrees in the circuit court involving a matter in dispute sufficient in value to justify the exercise of the appellate authority of this Court.   Whereupon it is ordered and adjudged by this Court, that this appeal be, and the same is hereby dismissed, for want of jurisdiction as aforesaid.