Manjero and seven others, Japanese, *v.* J. C. Davis.

## SUPREME COURT—IN ADMIRALTY.

### APRIL TERM—1874.

*Allen, Ch. J., Harris and Judd, J. J.*

Manjero, Sakutaro, Tookataro, Takojero, Yasugero, Kuma-kitchie, Matsoogo and Yoskie, Libellants, *vs.* J. C. Davis, Respondent and Appellant.

Where the libellants had signed shipping articles in which the voyage was described as from "Kanagawa, Japan, to Honolulu *via* Marianas Islands," the same being properly attested by the Hawaiian Consul General; Held that the libellants could not claim passage money from Honolulu to Japan, not having shown that they were induced to sign the articles by fraudulent representations.

Libel in admiralty on appeal from Justice Hartwell to the Supreme Court in admiralty, Mr. Justice Judd delivered the opinion of the Court.

The Japanese crew of the Hawaiian schooner South Sea filed a libel against J. C. Davis, master and owner of said vessel, claiming, in addition to their wages, passage money from Honolulu to Yokohama, Japan; and introduced evidence to show that the voyage of said vessel was from Japan to the South Sea Islands and return to Japan.

The respondent introduces the shipping articles of which there are two. The first one, dated January 22d, 1873, signed by all the libellants except Manjero, describes the voyage as from "Kanagawa, Japan, to Honolulu via Marianas Islands," and bears the certificate of E. M. Van Reed, H. H. M.'s Consul General for Japan, to the effect that the said articles were made out and signed in this Consulate, that they were read and explained by him to the parties whose names are subscribed thereto, comprising the·

crew of the said vessel, and that each of them personally acknowledged that he fully understood the same and had signed his name, of his own free will and accord, and the certificate is impressed with the seal of the Consulate. The libellant Manjero is shipped on separate articles dated February 1st, 1873, for a voyage "from Kanagawa, Japan, to South Sea Islands and return unless sooner discharged not to exceed six calendar months."

These second articles bear a certificate to the same purport as the first except that it is signed by C. A. Shephard, United States Consul and acting His Hawaiian Majesty's Consul General ror Japan, and impressed, very properly, with the seal of the United States Consulate. The respondent in his answer expresses his willingness to pay the crew their wages, and to provide for Manjero a passage back to Japan.

E. Preston and R. H. Stanley, proctors for libellants: The decree of $45 passage money back to Japan for each libellant must be affirmed, because it appears from the evidence that the libellants were induced to sign under the representation that they were to be returned to Japan. The two shipping articles are inconsistent with each other. The entries in the log book show that the voyage was intended to be as claimed by libellants. Shipping articles as to destination may be rebutted by parol.

W. C. Jones, proctor for respondent: Shipping articles are conclusive as to destination and wages. Manjero's contract to be returned to Japan does not control the contract of the other seamen. The log shows the destination was to Honolulu after the intermediate trading voyage in the South Seas was concluded.

*Per Curiam:* Although in admiralty seamen are allowed to join in a libel for wages, yet their's is not a joint contract, though all may have signed the same shipping articles; each contract may be considered separately though in the same

68

proceedings; for the shipping articles constitute a several contract with each seaman. Oliver *et al. vs.* Alexander *et al.*, 6 Peters, 143.

Viewing, therefore, the contract between the master and Manjero made on the 1st of February, which was for a voyage from .Japan to the South Sea Islands and return, as a separate and distinct engagement to return him to Japan, it is not inconsistent with the master's contract with the seven Japanese engaged on the 23d of January; for their voyage was to Honolulu via the Marianas Islands, which from Japan might properly be called South Sea Islands. The contract with them contained no engagement to return to Japan—and their voyage was consistent with Manjero's voyage—being the same so far as it went, but Manjero's was to continue further, that is, back to Japan.

Having thus far considered the two shipping articles as they appear on their face, and which we regard as *prima facie* evidence of the voyage intended, let us see if the libellants have rebutted their apparent intent.

The log books are introduced, which begin the voyage with an entry "Voyage from Yokohama to the South Sea Islands." It does not say "to Honolulu," which an uninformed navigator may have considered as one of the South Sea Islands,—but also, it does not say, "and back to Japan." On examining both log books we find it the custom of both the captain and the mate to write at the top of each page the particular intermediate passage which the vessel was then pursuing, as for example, "Guam to Tinnyan," "Tinnyan to Bonin Islands," and "Bonin Islands to Honolulu." On the 20th of July, 1873, the vessel left the Bonin Islands, and on the 21st the mate Payne resumed his charge of the log and heads the page for that day "Bonin Islands to Honolulu," and this heading is continued every day until the vessel reaches this port. The men came aft on the 23d of July and demanded to know why the vessel was heading so much to

the eastward and not to Japan, and the captain answers that he was going to Honolulu.    The courses in the log do not show that he ever steered westward or towards Japan after leaving the Bonin Islands.

There is some evidence from Daniel Ball, the cook, that at the time the crew came aft (July 23d) the captain told them that when he got to Honolulu he would see that they had their passage back to Japan.    But Ball shipped on the articles first mentioned, that is to "Honolulu via Marianas Islands," and his testimony must be received with caution as being one of the crew, his interests identical with the libellants, and if he wished to go back to Japan, he might have made common cause with them.

The testimony of Payne, the mate, is irreconcilable.    He says that after they left Bonin Islands, two days out, the captain told the boatswain that he was going to Japan, and two days after started for Honolulu; and yet the entries in the log made by this very witness show that the schooner was making the best of her way to Honolulu from the time of leaving the Bonin Islands, that it was on the third day from the Bonin Islands that the crew came aft and demanded to know where they were going.

We are of the opinion that the libellants have not shown that they were induced to sign the shipping articles by fraudulent representations, and that the shipping articles as to the termination of the voyage have not been rebutted.    The decree of the lower Court is reversed except as to Manjero, and with costs to the respondent as he offered in his answer to provide Manjero with a passage to Japan.    Decree accordingly.

Honolulu, April 29th, 1874.