Juan M. Pinilla OSARIO and Pablo Gonzalez Bergez, Plaintiffs,

v.

HARZA ENGINEERING COMPANY, Defendant.

No. 93 cv 5522.

United States District Court, N.D. Illinois, Eastern Division.

June 22, 1995.

Louis B. Garippo, Steven M. Yarosh, Kane, Obbish, Propes and Garippo, Chicago, IL, for plaintiffs.

Gary L. Prior, Lazar Pol Raynal, McDermott, Will & Emery, Paul M. Weiss, Harvey L. Walner & Associates, Ltd., Chicago, IL, for defendant.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

This case comes before this court on defendant's motion for a security bond and a motion to dismiss the Second Amended Complaint. For the reasons stated below, this court grants the motion to dismiss without

prejudice and grants the plaintiffs leave to file an Amended Complaint in accordance with this opinion. We also deny without prejudice at this time the motion for a security bond.

## BACKGROUND

The plaintiffs are Argentine lawyers who, on behalf of their client, tried and won a case in Argentina against the defendant, Harza Engineering Company ("Harza"). The Argentine court ordered the defendant to pay a portion of the legal costs to the lawyers, plaintiffs in this action. Second Amended Complaint ¶¶ 12–14. In 1991, the Argentine Court of Appeals initially assessed the legal fees at the equivalent of $60,000 in U.S. dollars. *Id.* ¶ 14. The Argentine award also provides for the accrual of interest on the judgment. *Id.* ¶ 18. Due to hyperinflation and a revaluation of the Argentine currency against the U.S. dollar in April 1991, plaintiffs' award in U.S. dollar terms and including interest, exceeded $76,000. *Id.* ¶¶ 19–20. As of April 30, 1993, the plaintiffs' award exceeded $159,478. *Id.* ¶ 21.

Plaintiffs have brought suit in this court requesting that we enforce the Argentine award of legal fees. In their Second Amended Complaint the plaintiffs allege diversity jurisdiction pursuant to 28 U.S.C. § 1332. Both plaintiffs are citizens of Argentina. Second Amended Complaint, ¶ 3. The defendant is a corporation, incorporated under the laws of Delaware with its principal place of business in Illinois. *Id.* ¶ 4. The plaintiffs claim an amount in controversy exceeding $159,478.40. *Id.* ¶¶ 30, 34. In the Second Amended Complaint, plaintiffs assert two causes of action: recognition and enforcement of a foreign judgment (Count I) and an action for debt (Count II).

## ANALYSIS

### I. SUBJECT MATTER JURISDICTION

The Defendant filed a motion to dismiss in 1993, alleging that this court lacks subject matter jurisdiction. We granted the motion to dismiss and gave the plaintiffs leave to file

an Amended Complaint. Since then, the plaintiffs have filed two Amended Complaints. The most recent was plaintiffs' Second Amended Complaint.

The defendant subsequently filed a "Motion to Dismiss Plaintiffs' Second Amended Complaint at Law and to Stand on Briefs Filed in Support of and in Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction." The defendant moves to dismiss with prejudice pursuant to Fed.R.Civ.P. 12(b)(1) and 12(h)(3) for lack of subject matter jurisdiction. In the plaintiffs' response, they indicate their willingness to stand on the briefs they filed concerning the defendant's original motion to dismiss.

■ When deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), it is proper for the district court to look beyond the jurisdictional allegations in the Complaint and to view all evidence submitted. *Roman v. United States Postal Service,* 821 F.2d 382, 385 (7th Cir.1987). This standard differs from the one district courts use when deciding a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6); in the latter case, when the district court looks beyond the pleadings, the court is to treat the motion as one for summary judgment under Fed.R.Civ.P. 56(c). *Id.* In deciding the instant motion to dismiss for lack of subject matter jurisdiction, we will consider all relevant documents.

This case presents several problems. The first concerns the documents that the plaintiffs have filed. In the Second Amended Complaint, the plaintiffs indicate that they have attached as Exhibit A a copy of an Argentine court order certifying that the defendant is liable to plaintiffs for an amount exceeding $159,000. Second Amended Complaint, ¶¶ 25, 30. The plaintiffs, however, failed to attach Exhibit A to the Second Amended Complaint. We note for the record that the plaintiffs also omitted attaching Exhibit A to their First Amended Complaint. The plaintiffs attached an Exhibit A to the original Complaint.[1]

---

1. The original Exhibit A includes a letter rogatory in Spanish, the English translation of that

letter rogatory and two letters of correspondence. *See, infra,* note 8.

We informed the parties about the missing exhibit at a status hearing on June 8, 1995. At that time, the court granted the plaintiffs leave to supplement the Second Amended Complaint with a copy of the new Exhibit A. The plaintiffs subsequently submitted as the new Exhibit A two documents: one in Spanish and a purported English translation.

At the June 13, 1995 status hearing, the court discussed with the parties the numerous problems that we have found with the new Exhibit A. The new Exhibit A is addressed to any judge of competent jurisdiction in Chicago from Angel O. Sala, Judge of Commerce in Buenos Aires, Argentina. That document asks for judicial assistance to ensure that Harza Engineering Company, a resident of Chicago, pays the sum of $183,-222.06 plus $50,000 of interest to the lawyers Pablo Gonzalez Bergez and Juan Manuel Pinilla Osario; the debt is pursuant a judgment in *CUYUM S.A.T. v. WARTSKI, Peter et al.*, a case before the Commerce Court of Argentina. A review of the new Exhibit A indicates that the tendered document is a letter rogatory.

## A. LETTERS ROGATORY

Letters rogatory constitute requests by a court of one country to a court of another country asking the answering court to locate a person within the jurisdiction and obtain answers to written questions. *U.S. v. Bastanipour*, 697 F.2d 170, 178, n. 3 (7th Cir.1982), *cert. denied*, 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 358 (1983). Letters rogatory, which are also known as letters of request, are transmitted between courts by their respective governments. *Id.*

This court discussed with the parties on June 13, 1995 the problems with the letter rogatory recently tendered to the court as the new Exhibit A. The plaintiffs have failed to provide the supporting documentation required by the Inter–American Convention on Letters Rogatory, to which the United States and Argentina are signatories. *See* 28 U.S.C. § 1781. Article 3 to the Additional Protocol to the Inter–American Convention

on Letters Rogatory provides that letters rogatory shall be accompanied by the following:

a. Copy of the complaint or pleading that initiated the action in which the letter rogatory was issued, as well as a translation thereof into the language of the State of destination ...

b. Untranslated copy of the documents attached to the complaint or pleading.

c. Untranslated copy of any rulings ordered issuance of the rogatory;

. . . .

e. Certificate conforming to Form C annexed to this Protocol on which the Central Authority[2] of the State of destination shall attest to execution or non-execution of the letter rogatory.

The copies shall be regarded as authenticated for the purposes of Article 8(a) of the Convention if they bear the seal of the judicial or other adjudicatory authority that issued the letter rogatory. 28 U.S.C. § 1781.

The plaintiffs in the instant action have failed to tender the above-mentioned documents to this court. To date, the plaintiffs have not provided us with a copy of the Complaint or other pleadings filed in Argentina or a copy of the Argentine rulings that serve as the basis for their letters rogatory. The recently issued letter rogatory in the case at bar is unsigned and bears no seal of the judicial authority that issued it. In addition, the plaintiffs have failed to comply with 28 U.S.C. § 1741 and Fed.R.Civ.P. 44 regarding foreign official records.

We also find problematic the purported translation of the most recent letter rogatory. The translation does not appear to be complete or accurate. Line 11 of the letter rogatory in Spanish states "se ha resuelto librar el presente exhorto" and the translation states "it has been ordered to send the present." The English fails to translate the

---

2. Pursuant to Article 4 of the Inter–American Convention on Letters Rogatory and Article 2 of the Additional Protocol, the Department of Justice is the Central Authority competent to receive and distribute letters rogatory. *See* 28 U.S.C. § 1781.

phrase "presente exhorto[3]," which, we believe, means the instant letter of request. In addition, lines 27–28 of the letter rogatory in Spanish state key words that, we believe, were not accurately translated into English. The Spanish version states "ordena esta rogatoria[4]" and the English version reads: "ordering this document." The purported English translation seemingly fails to translate precisely words that refer to the Spanish document as a letter rogatory or a letter of request. We also note for the record that the purported translation is unsigned and uncertified, which along with the other problems call into question its authenticity and accuracy.

■ The usual but not exclusive procedure for filing a letter rogatory is for the foreign government to forward the request through the United States Department of State. *In re Civil Rogatory Letters Filed by the Consulate of The United States of Mexico*, 640 F.Supp. 243 (S.D.Tex.1986). *See also* 28 U.S.C. §§ 1781(a)(1) and 1781(b)(1). The State Department screens letters rogatory and forwards them to the appropriate court or returns them unexecuted.

In the case at bar, the documents filed in the new Exhibit A give no indication that the United States Department of State received and forwarded the letter rogatory to this court. The most recent letter rogatory apparently refers to a ruling that Judge Angel Sala of the Argentine Commerce Court made on May 3, 1995 in which the Argentine court ratified the original judgment with accrued interest and costs and ordered a letter roga-

tory to be sent via diplomatic channels. It appears as though the plaintiffs bypassed the Department of State with the first and instant letters rogatory that accompanied the original and Second Amended Complaint, respectively.[5]

■ Without deciding whether the plaintiffs acted appropriately by filing with this court the letters rogatory without first going through the Department of State, we believe that the request for judicial assistance pursuant to a letter rogatory is an incorrect vehicle to enforce a foreign judgment. Federal statute authorizes district courts, in response to letters rogatory, to assist foreign tribunals by compelling evidence or documents for use in foreign proceedings. 28 U.S.C. § 1782.[6] The district court has discretion in determining whether to honor letters rogatory. *In re Letters Rogatory from the Tokyo District, Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir.1976); *see also* 28 U.S.C. § 1782. We are in agreement with other district courts that have held that there is no federal statute that authorizes a federal court to enforce a foreign judgment pursuant to a letter rogatory. *Tacul, S.A. v. Hartford National Bank & Trust Co.*, 693 F.Supp. 1399 (D.Conn.1988) (the district court found that neither federal law nor state law permitted a federal court to enforce a Mexican judgment in response to a letter rogatory); *see also In re Civil Rogatory*, 640 F.Supp. at 243 (the district court refused to enforce a Mexican judgment through a letter rogatory).

3. "Exhorto" is a legal term defined as letters requisitorial. *See Cassell's Spanish Dictionary* (Funk & Wagnalls, 1960).

4. "Rogatoria" is defined as rogatory. *Id.*

5. At the June 13, 1995 status hearing, the plaintiffs indicated that they received a faxed copy of a document indicating that a letter rogatory was being sent by a competent authority in Argentina to the United States Government. The plaintiff, however, did not tender a copy of this fax at that time.

6. Title 28 U.S.C. Section 1782 states in relevant part:

**Assistance to foreign and international tribunals and to litigants before such tribunals.**

(a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

The United States Department of State circulated a letter dated February 3, 1976 to various consular officials concerning the scope of judicial assistance afforded to foreign tribunals and litigants. *In re Civil Rogatory Letters*, 640 F.Supp. at 244. The Administrative Office of United States Courts circulated this letter to all federal judges in February 1976. *Id.* The State Department's letter stated:

> The Department of State receives from time to time a variety of requests from foreign tribunals asking, for example, that their judgments be enforced; ... that property in the United States be sequestered; ... such requests are beyond the scope of authority granted to the courts by law ...; foreign judgments, decrees, or orders cannot be enforced in the United States by means of a request for judicial assistance, and the Department of State will return such requests unexecuted. Return of a request under these circumstances does not imply that a judicial remedy is not available in the U.S.; it simply means that the remedy cannot be had through the medium of letters rogatory. *Id.* (emphasis in the original).

The Department of State based its opinion on 28 U.S.C. § 1782. *Id. See In re Request for Assistance from Ministry of Legal Affairs of Trinidad and Tobago*, 848 F.2d 1151 (11th Cir.1988), *cert. denied, Azar v. Minister of Legal Affairs of Trinidad and Tobago*, 488 U.S. 1005, 109 S.Ct. 784, 102 L.Ed.2d 776 (1989) (Court of Appeals explains the history of § 1782). This federal statute is limited to the role of U.S. courts in procuring testimony or evidence for use in a foreign court proceeding. Nothing in that section, nor in 28 U.S.C. § 1781, which codifies the Hague Convention of March 18, 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters and the Inter–American Convention on Letters Rogatory [7], nor any other federal statute provides for the enforcement of a foreign judgment through the use of letters rogatory. *See id.*

## B. ENFORCEMENT OF A FOREIGN JUDGMENT

■ When a federal court sits in diversity, as in the instant case, the weight of authority suggests that the court applies state law to determine the conclusive effect of a foreign court judgment. *See* Wright, Miller & Cooper, 18 *Federal Practice and Procedure: Jurisdiction* § 4473 at 742 (1st ed. 1981). A determination of whether to recognize and enforce the Argentine judgment must be resolved according to Illinois law. *See Ingersoll Milling Machine Co., v. Granger*, 833 F.2d 680, 686 (7th Cir.1987). The Illinois Uniform Foreign Money–Judgments Recognition Act ("Uniform Act"), 735 ILCS 5/12–618 *et seq.*, as enacted by the State of Illinois, governs here.

■ Illinois' Uniform Act establishes the criteria for recognizing and enforcing foreign judgments. The Uniform Act applies to any foreign judgment that is "final and conclusive and enforceable where rendered even though an appeal therefrom is pending or is subject to appeal." 735 ILCS 5/12–619. The statute defines a "foreign judgment" as "any judgment of a foreign state granting or denying recovery of a sum of money, other than a judgment for taxes, a fine or other penalty, or a judgment for support in matrimonial or family matters." 735 ILCS 5/12–618. There is nothing in the Uniform Act that authorizes the enforcement of a foreign judgment pursuant to a letter rogatory.

In the case at bar, the plaintiffs ask this court to enforce the Argentine award. Second Amended Complaint, Count I. We note for the record that at no time have the plaintiffs provided this court with a copy of the Argentine judgment as opposed to the letters rogatory.[8] We find nothing in Illinois'

---

**7.** The language of Article 9 of the Inter–American Convention on Letters Rogatory suggests this principle even if the wording of the convention is less than crystal clear:

> *Execution of letters rogatory shall not imply* ultimate recognition of the jurisdiction of the judicial or other adjudicatory authority issuing the letter rogatory or *a commitment to recog-*

*nize the validity of the judgment it may render or to execute it.* (emphasis added) See 28 U.S.C. § 1781.

**8.** At the June 13, 1995 status hearing, the plaintiffs asserted that they tendered to the court a copy of the underlying Argentine judgment in Exhibit A, which was attached to their original

Uniform Act that would authorize this court sitting in diversity to recognize and enforce the Argentine judgment pursuant to letters rogatory.

## C. AMOUNT IN CONTROVERSY

Much of the debate in this case thus far has concerned the amount in controversy issue. The defendants move for dismissal of this case because the plaintiffs allegedly fail to meet the amount in controversy requirement for diversity actions pursuant to 28 U.S.C. § 1332(a). Specifically, the defendant alleges that to meet the amount in controversy requirement, the plaintiffs improperly aggregate their claims and they inappropriately include interest in their amount in controversy. The plaintiffs respond by asserting that they are entitled to aggregate their claims because they assert a single right to a common and undivided fund. The plaintiffs also maintain that this court may consider the entire amount of the judgment, including interest, when considering whether the plaintiffs have met the amount in controversy requirement for a diversity action.

■ District courts have original jurisdiction over all civil actions between citizens of different states when the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). It is well settled that plaintiffs may not aggregate separate and distinct claims to satisfy a jurisdictional amount for diversity actions. *Griffith v. Sealtite Corp.,* 903 F.2d 495 (7th Cir.1990). The United States Supreme Court first announced this principal in *Oliver v. Alexander,* 31 U.S. 143, 6 Pet. 143, 8 L.Ed. 349 (1832), which was a case involving several seamen who sued in admiralty for the recovery of wages. The Circuit Court entered separate decrees for each seaman and they appealed to the Supreme Court. The seamen attempted to aggregate their claims to meet the amount in controversy requirement. The Supreme Court held that their claims could not be aggregated because each seaman had a separate and distinct claim to his wages. *Id.* at 150.

After *Oliver v. Alexander,* the Supreme Court announced an important exception to the general principle of not allowing aggregation of claims in *Shields v. Thomas,* 58 U.S. 3, 17 How. 3, 15 L.Ed. 93 (1854). *Shields* involved a suit by the representatives of a man who died intestate against Shields, the new husband of the widow. The plaintiffs alleged that they were entitled to the decedent's property that Shields had converted. The Kentucky state court issued a decree against Shields for damages and apportioned individual amounts to the respective representatives. The representatives sought to enforce the decree in a federal court in Iowa. The sum of the decree exceeded the federal court's then jurisdictional amount of $2,000 but the sum allotted to each representative was less than $2,000. The United States Supreme Court held that there was subject matter jurisdiction by looking to the "matter in controversy":

> [T]he court thinks the matter in controversy in the Kentucky court, was the sum due to the representatives of the deceased collectively; and not the particular sum to which each was entitled, when the amount due was distributed among them, according to the laws of the State. They all claimed under one and the same title. They had a common and undivided interest in the claim, and it was perfectly immaterial to the appellant how it was to be shared among them.... It is like a contract with several to pay a sum of money. It may be that the money, when recovered, is to be divided between them in equal or unequal proportions. Yet, if a controversy arises on the contract, and the sum in dispute upon it exceeds $2,000, an appeal would clearly lie to this court, although the interest of each individual was less than that sum.... This being the controversy in Kentucky, the decree of that court, apportioning the sum recovered among the sev-

---

Complaint. We find no merit to that assertion. Exhibit A to the original Complaint contains a letter rogatory, issued by Judge Angel O. Sala to a court of competent jurisdiction in Chicago, requesting judicial assistance in the enforcement of an Argentine judgment. The original Exhibit A and the more recent Exhibit A are similar, except regarding the value of the Argentine judgment.

eral representatives, does not alter its character when renewed in Iowa. So far as the appellant is concerned, the entire sum found due by the Kentucky court is in dispute. 58 U.S. at 4.

■ For this court to determine whether the amount in controversy in the instant case meets the requirements of 28 U.S.C. § 1332(a), we need to see the actual judgment. We can then determine whether the case at bar is more like *Oliver* or *Shields*. We recognize that earlier this court granted defendant's motion to dismiss without prejudice because of our concern over the plaintiffs' aggregation of their claims. We now realize that the plaintiffs may not proceed on their causes of action based upon letters rogatory. Instead, plaintiffs must tender a copy of the underlying Argentine judgment, which they seek to enforce.

A great deal of time has passed since the Argentine lower court awarded the judgment, the parties appealed the judgment in Argentina, and today. Since the judgment was first announced, the Argentine currency has gone through a revaluation. This presents the difficulty of deciding which exchange rate to affix to the judgment, which was denominated in local currency. Second Amended Complaint ¶¶ 14, 19–21.

When faced with a similar dilemma in *Ingersoll, supra,* the Seventh Circuit affirmed a district court's decision to use the exchange rate in effect on the day that the foreign tribunal entered its judgment. 833 F.2d at 692. The Seventh Circuit explained that the district court "must apply the currency conversion rule employed by the courts of the state in which the action was brought." *Id.* In *Ingersoll,* the Court of Appeals was unaware of any Illinois authority concerning the appropriate conversion rate. *Id. Ingersoll* suggests that we should use the exchange rate in effect on the day of judgment.

In any event, we need to see the underlying judgment. This court will not reach the issue of whether the plaintiffs improperly included interest to reach the amount in controversy requirement pursuant to 28 U.S.C. § 1332(a) until the plaintiffs provide this court with a copy of the Argentine judgment.

### CONCLUSION

For the reasons explained above, this Court declines to enforce the Argentine award through letters rogatory. Consequently, we grant the motion to dismiss without prejudice. Plaintiffs have leave to file an Amended Complaint provided that they file a copy of the Argentine judgment that they seek to enforce along with all required documentation. This may require the plaintiffs to request from the Argentine court an amended judgment—not another letter rogatory—to take into account the revalued currency as well as any accumulated interest and costs authorized by the Argentine court.

Since we are dismissing this case without prejudice, we also deny without prejudice the motion for a security bond. We grant defendant leave to refile this motion for a security bond at an appropriate time if plaintiffs refile their cause of action in accordance with this ruling and establish that this court has subject matter jurisdiction over their action.