*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0324p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

TOM EVERETT, et al.,

　　　　　　　　　　*Plaintiffs-Appellants,*

　　　　*v.*

No. 05-3557

VERIZON WIRELESS, INC., et al.,

　　　　　　　　　　*Defendants,*

DOBSON CELLULAR SYSTEMS, INC.,

　　　　　　　　　　*Defendant-Appellee.*

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-07763—David A. Katz, District Judge.

Argued: April 20, 2006

Decided and Filed: August 28, 2006

Before: BATCHELDER and SUTTON, Circuit Judges; FORESTER, District Judge.[*]

_____

### COUNSEL

**ARGUED:** Dennis E. Murray, Sr., MURRAY & MURRAY, Sandusky, Ohio, for Appellants. John B. Nalbandian, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Dennis E. Murray, Sr., Donna Jean A. Evans, MURRAY & MURRAY, Sandusky, Ohio, for Appellants. John B. Nalbandian, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, Thomas J. Lee, Michael J. Zbiegien, TAFT, STETTINIUS & HOLLISTER, Cleveland, Ohio, for Appellee.

_____

### OPINION

_____

　　　SUTTON, Circuit Judge. Plaintiffs filed this lawsuit in state court, and defendants removed it to federal court on diversity grounds. Contending that the claims did not satisfy the $75,000 amount-in-controversy requirement, plaintiffs moved to remand the case to state court. The district court denied the remand motion.

_____

[*]The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

After the court rejected plaintiffs' claims on the merits, plaintiffs appealed, insisting that the district court never had jurisdiction over the case. We agree. Each individual claim falls below the $75,000 amount-in-controversy requirement. And Dobson Cellular may not overcome this defect by aggregating plaintiffs' disgorgement claims (because they do not have a common and undivided interest in them) or by aggregating their punitive-damages claims (because they do not have a common and undivided interest in them either). And even if Dobson Cellular may consider the total cost to it of complying with the injunction claim, a point we need not decide, it has not shown that this amount would satisfy the $75,000 requirement.

## I.

On November 3, 2000, four plaintiffs from Ohio and Michigan—Tom Everett, Lutricia Bradley, John T. Lunsford and Gregory L. Baker—filed this class action against their respective cellular telephone service providers in the Erie County (Ohio) Court of Common Pleas. None of the defendants—Dobson Cellular Systems, Inc., Verizon Wireless, Inc., Vodafone Airtouch, P.L.C., Airtouch Communications, Inc. or New Par—is based in, or maintains its principal place of business in, either of the two States.

The gist of plaintiffs' claims is that the providers falsely represented to them that they would not charge for unanswered phone calls or those that generated a busy signal. Alleging breach of contract, unjust enrichment and deceptive sales practices, plaintiffs sought an unspecified amount of compensatory damages, injunctive relief, restitution, disgorgement and "[s]uch other and further relief as may be appropriate." JA 66.

On December 11, 2000, invoking the diversity-jurisdiction statute, 28 U.S.C. § 1332, defendants removed the case to the Northern District of Ohio. Plaintiffs moved to remand, arguing that the amount in controversy did not exceed $75,000. The district court denied the motion, holding that the size of the disgorgement claim met this threshold.

Litigation on the merits of the claims proceeded in spurts. The district court dismissed several of the plaintiffs' claims under Michigan law, then stayed the case pending resolution of a similar class action in California that potentially overlapped with the class claims in this case. After the California case settled, plaintiffs dismissed with prejudice their claims against all of the defendants save Dobson Cellular Systems, Inc.

On March 15, 2004, the district court granted Dobson Cellular's motion for summary judgment on the remaining claims. As two of the named plaintiffs were customers only of the voluntarily dismissed providers (John Lunsford and Gregory Baker) and as one of the named plaintiffs filed a petition for bankruptcy (Lutricia Bradley), only one plaintiff and purported class representative (Thomas Everett) remains. On appeal, Everett challenges the district court's resolution of the remand motion, though not its resolution of the merits.

## II.

"The district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs.*, 125 S. Ct. 2611, 2616 (2005) (internal quotation marks omitted). While plaintiffs originally filed this case in state court, the removal statute, 28 U.S.C. § 1441, "authorizes" defendants to remove "civil actions from state court to federal court when the action initiated in state court is one that could have been brought, originally, in a federal district court." *Lincoln Prop. Co. v. Roche*, 126 S. Ct. 606, 610 (2005).

In addition to giving federal district courts original jurisdiction over cases arising under federal law, *see* 28 U.S.C. § 1331, Congress "has granted district courts original jurisdiction in civil

actions between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens," "to provide a neutral forum for what have come to be known as diversity cases," *Exxon Mobil*, 125 S. Ct. at 2617; see 28 U.S.C. § 1332. "To ensure that diversity jurisdiction does not flood the federal courts with minor disputes, § 1332(a) requires that the matter in controversy in a diversity case exceed a specified amount, currently $75,000." *Exxon Mobil*, 125 S. Ct. at 2617.

To satisfy the amount-in-controversy requirement at least one plaintiff's claim must independently meet the amount-in-controversy specification. *See id*. at 2620. While a *single* plaintiff may aggregate the value of her claims against a defendant to meet the amount-in-controversy requirement, even when those claims share nothing in common besides the identity of the parties, *see Snyder v. Harris*, 394 U.S. 332, 335 (1969), the same is not true with respect to *multiple* plaintiffs. "[F]rom the beginning," the courts have refused to permit "the separate and distinct claims of two or more plaintiffs" to "be aggregated in order to satisfy the jurisdictional amount requirement." *Id*. Only when "two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest" may federal courts rely on the aggregate amount of these claims to satisfy this requirement. *Id*.; *see also Zahn v. Int'l Paper Co.*, 414 U.S. 291, 294 (1973), *superseded on other grounds by statute*, Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089, § 310, *as recognized in Exxon Mobil Corp.*, 125 S. Ct. at 2622; *Clark v. Paul Gray, Inc.*, 306 U.S. 583, 589 (1939), *superseded on other grounds by statute*, Judicial Improvements Act of 1990, Pub. L. No. 101-650, 104 Stat. 5089, § 310, *as recognized in Exxon Mobil Corp.*, 125 S. Ct. at 2622; *Troy Bank v. G. A. Whitehead & Co.*, 222 U.S. 39, 40–41 (1911).

A defendant wishing to remove a case bears the burden of satisfying the amount-in-controversy requirement. *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 155 (6th Cir. 1993). Normally, "the sum claimed by the plaintiff[s] controls," *id*. at 156, but where plaintiffs seek "to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement," the defendant satisfies its burden when it proves that the amount in controversy "more likely than not" exceeds $75,000, *id*. at 158**.** In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal. Claims present when a suit is removed but subsequently dismissed from the case thus enter into the amount-in-controversy calculation. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).

No one argues that any individual plaintiff's claims in this case exceed $75,000, which is not surprising given the improbability of individual phone users running up large bills for unanswered or busy-signal calls. And in debating this jurisdictional question, no one invokes the Class Action Fairness Act, which Congress enacted after plaintiffs filed this lawsuit and which amended § 1332 to provide federal-court jurisdiction in class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and cost." Class Action Fairness Act, Pub. L. No. 109-2, 119 Stat. 4, 9 (Feb. 18, 2005) (codified at 28 U.S.C. § 1332(d)(2)); *see Exxon Mobil*, 125 S. Ct. at 2628 (the Act's amendments to § 1332 are not retroactive).

A.

In contending that the federal courts never had jurisdiction over this dispute, Everett argues that the district court erred in aggregating plaintiffs' disgorgement claims. As a remedy for their unjust enrichment claim, plaintiffs asked the court to require the defendants "to disgorge all amounts received as a result of charging for calls that were not answered or were busy." JA 66. In assuming jurisdiction over the case, the district court concluded that the value of each of these claims could be aggregated because they "derive[d] from a common and undivided interest." D. Ct. Op. at 4.

From the first Congress to the present, there has been an amount-in-controversy requirement for diversity cases, one that started at $500, *see* Judiciary Act of 1789, 1 Stat. 73, 78 (diversity

jurisdiction exists "where the matter in dispute exceeds, exclusive of costs, the sum or value of five hundred dollars"), and one that presently rests at $75,000, *see* 28 U.S.C. § 1332 (diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs"); Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, 110 Stat. 3847, 3850.

The Supreme Court has matched Congress's commitment to this jurisdictional limitation by consistently interpreting it to prevent multiple plaintiffs from combining their damages claims to meet that requirement save when they share a common and undivided interest in them. In *Oliver v. Alexander*, 31 U.S. 143 (1832), the wage claims of several seamen did not satisfy the amount in controversy when considered singly but did satisfy the requirement when considered collectively. The Court refused to premise jurisdiction on the aggregated claims because "necessarily a several and distinct contract [existed] with each seaman, for the voyage, at his own rate of wages; and though all may sign the same shipping paper, no one is understood to contract jointly with, or to incur responsibility for any of the others." *Id*. at 145. Observing that "every seaman has a right to sue severally for his own wages in the courts of common law," the Court reasoned that "[i]f the cause of action is several, the suit must be several also." *Id*. at 145–46. "[F]rom the beginning to the end of the suit," the Court concluded, the lawsuit was "in reality a mere joinder of distinct causes of action by distinct parties, growing out of the same contract," and accordingly their claims could not be aggregated. *Id*. at 147.

*Oliver v. Alexander* "is representative of the unbroken line of decisions of th[e] Court" holding that "plaintiffs with separate and distinct claims could not aggregate their respective 'matters in dispute'" to establish federal jurisdiction. *Zahn*, 414 U.S. at 295. That line of decisions continued even after amendments to the Federal Rules of Civil Procedure led to the creation of the modern class action. In *Snyder v. Harris*, 394 U.S. 332 (1969), which involved a class action, the Court held that multiple plaintiffs may aggregate their claims only where they "unite to enforce a single title or right in which they have a common and undivided interest." *Id.* at 335; *see also Zahn*, 414 U.S. at 294; *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983) ("The general rule is that while separate and distinct claims may not be aggregated, aggregation is permissible when two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.") (internal quotation marks omitted); *Sturgeon v. Great Lakes Steel Corp.*, 143 F.2d 819, 821 (6th Cir. 1944); *Hilliker v. Grand Lodge, K. P.*, 112 F.2d 382, 384 (6th Cir. 1940).

Dobson Cellular does not dispute that it must show plaintiffs have "unite[d] to enforce a single title or right in which they have a common and undivided interest" in order to aggregate their claims, *Snyder*, 394 U.S. at 335, but contends that it has satisfied that requirement here. Presumably recognizing that the similar nature of the plaintiffs' contract claims for compensatory damages would not permit aggregation, *see Oliver v. Alexander*, 31 U.S. at 145, the company relies on plaintiffs' unjust enrichment claim. To vindicate that claim, it points out, plaintiffs asked the court to require that the providers disgorge their ill-gotten gains and impose a constructive trust on that amount, thereby creating a "common fund" in which all plaintiffs share an interest. But even if plaintiffs were to share a *common* interest in the contents of such a constructive trust, that would not make their interest *undivided*—that would not establish in other words that their disgorgement claims stem from a "*single* title or right." Aggregation is permitted "where there is *not only* a common fund from which the plaintiffs seek relief, but where the plaintiffs *also have a joint interest in that fund*, such that if plaintiffs' rights are not affected by the rights of co-plaintiffs then there can be no aggregation. In other words, the obligation to the plaintiffs must be a joint one." *Eagle Star Ins. Co. v. Maltes*, 313 F.2d 778, 781 (5th Cir. 1963) (emphasis added and citations omitted); *see also Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1262 (11th Cir. 2000) (noting that "the presence of a 'common and undivided interest' is rather uncommon, existing only when the defendant owes an obligation to the group of plaintiffs *as a group* and not to the individuals severally") (emphasis added); *Gilman v. BHC Sec.*, 104 F.3d 1418, 1423 (2d Cir. 1997); *Eagle v.*

*Am. Tel. & Tel. Co.*, 769 F.2d 541, 546 (9th Cir. 1985) ("[T]he character of the interest asserted depends on the source of plaintiffs' claims. If the claims are derived from rights that they hold *in group status*, then the claims are common and undivided. If not, the claims are separate and distinct.") (emphasis added).

A common interest in a litigation recovery thus represents a necessary, but by itself insufficient, ground to qualify claims for aggregation. *See Sturgeon*, 143 F.2d at 821–22 ("Appellants are undertaking to marshal a common fund in which each of them and those on whose behalf they sue are interested, but this fact, standing alone, does not give the court jurisdiction" because "[t]he rights of the employees are not derived from the same or common title, but the interest of each in the dividend fund is based upon a separate and distinct contract each has with the insurer and the appellee-employer."). The point of the "common fund exception" is not to permit plaintiffs to aggregate their claims whenever they share a proprietary interest in the proceeds of litigation; it is to permit them to aggregate their claims when they jointly own, or have an undivided interest in, property at issue in the litigation. Plaintiffs suing to enforce a "single title or right" must share their "common and undivided interest" in vindicating that right before the litigation, not as a result of it. *See Gilman*, 104 F.3d at 1424, 1430. The "paradigm 'common fund' cases" thus involve "claims to a piece of land, a trust fund, an estate, an insurance policy, a lien, or an item of collateral, which they claim as common owners or in which they share a common interest arising *under a single title or right*." *Id.* at 1424 (emphasis added). Where "putative class [members] have no joint interest other than a shared appetite for a money judgment payable by a single defendant," they do not share "the type of 'common and undivided interest' that warrants an exception to the rule against aggregating claims." *Id.*; *see also Tex. & Pac. Ry. Co. v. Gentry*, 163 U.S. 353, 360–61 (1896) (allowing claim aggregation in a wrongful-death action asserted under a statute that "contemplate[d] but one action for the sole and exclusive benefit" of all of the surviving beneficiaries); *Troy Bank*, 222 U.S. at 41 (allowing claim aggregation to enforce a single vendor's lien); *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 546–47 (9th Cir. 1985) (allowing claim aggregation when minority shareholders sued a majority shareholder because "the source of the shareholders' claim for the wrongful depletion of corporate assets is the common and undivided interest each shareholder has in a corporation's assets and a right to share in dividends").

While each plaintiff in this instance asserts a similar claim against his or her telephone carrier—that the carrier impermissibly charged for unanswered or busy-signal calls—nothing about the similarity of these claims shows that the plaintiffs hold a joint interest in enforcing a single title or right. Like the seamen's claims for wages in *Oliver*, each putative class member's claim for overcharges may stem from a similarly worded contract but they nonetheless remain legally distinct rights. Each customer had the option, had he or she wished, to sue the provider individually for the amount the provider wrongly charged—a legal reality that precludes jurisdiction today no less than it did 100 years ago. *See Gibson v. Shufeldt*, 122 U.S. 27, 30 (1887); *see also Sturgeon*, 143 F.2d at 822.

Nor does it make a difference that Dobson Cellular seeks to aggregate equitable unjust enrichment claims, as opposed to legal contract claims. "The fact that the breach of contract claim . . . is alternatively characterized as one for unjust enrichment does not change the result of the aggregation analysis." *Morrison*, 228 F.3d at 1264. "For amount in controversy purposes, . . . it is the nature of the right asserted, not that of the relief requested, that determines whether the claims of multiple plaintiffs may be aggregated." *Id.* Where plaintiffs assert "rights arising from their individual insurance policies" (or individual cell phone contracts), and where, "if successful, they will recover the amount of excessive premiums" (or cell phone charges) that "each paid under his own policy" (or contract), "[t]he fact that this recovery may be obtained under an equitable theory of unjust enrichment does not convert separate and distinct claims for damages into a fund in which the class members have a common and undivided interest." *Id.*

Attempting to alter this conclusion, Dobson Cellular maintains that there is a "collective action exception to the non-aggregation principle." Dobson Cellular Br. at 17. "[T]he class as a whole obtains an undivided interest in the potential disgorgement" claim, the company submits, because the class members brought this claim "in addition to" their compensatory damages claims. *Id.* Whatever exceptions there may be to the non-aggregation principle, it is hard to understand why there should be a "collective action" exception in view of the non-aggregation principle's steadfast application to class actions. *See Snyder*, 394 U.S. at 336–37. At any rate, this contention suffers from at least three other flaws.

First, to the extent the company means to argue that plaintiffs sought relief under their unjust enrichment claims in addition to the relief available under their contractual claims, no such relief is available under Ohio law. *See, e.g.*, *All Occasion Limousine v. HMP Events*, No. 2003-L-140, 2004 WL 2803383, at *4 (Ohio Ct. App. Sept. 24, 2004) ("The doctrine of unjust enrichment does not apply when a contract actually exists; it is an equitable remedy applicable only when the court finds there is no contract.") (citing *Rice v. Wheeling Dollar Sav. & Trust Co.*, 155 Ohio St. 391, 396–97 (1951)).

Second, to the extent the company means to argue that plaintiffs sought disgorgement not only of their direct damages, but also of some additional money—say, the providers' reinvested proceeds, *see, e.g.*, *Pruett v. Flavell*, No. 14-01-14, 2001 WL 1167453 (Ohio Ct. App. Sept. 28, 2001)—no part of the complaint makes any such request. Nowhere does the complaint, for example, ask for profits derived from the providers' reinvestment of the overcharges, *see* JA 64 ("[A] constructive trust should be established over the *monies paid by the Plaintiffs and the Class Members* . . . .") (emphasis added); JA 65 ("Defendants . . . received payments from the Plaintiffs and the Class Members for charges for calls that were not answered or were busy. As a result, Defendants would be unjustly enriched if they were allowed to retain *such ill-gotten funds*, and therefore, a constructive trust should be imposed on all monies wrongfully obtained by the Defendants.") (emphasis added).

And third, and perhaps most fundamentally, the company has not shown why the nature of the disgorgement remedy alters the underlying source of the rights plaintiffs seek to vindicate—why in other words plaintiffs with separate and distinct claims for overcharges would have a single and undivided right to disgorgement by "Defendants" of "payments" that they "received . . . from the Plaintiffs and the Class Members for charges for calls that were not answered or were busy." *Id.*

For similar reasons, *In re Microsoft Corp. Antitrust Litigation*, 127 F. Supp. 2d 702 (D. Md. 2001), does not advance the company's position. Plaintiffs there asked for disgorgement of defendant's "unlawfully obtained profits," *id.* at 719, "in addition to their claims for damages," *id.* at 720. Because the court determined that the plaintiffs had "the right under applicable substantive law to require the defendant to disgorge . . . all profits unlawfully obtained from the course of conduct that injured" them, it held that jurisdiction could be premised on the total amount that the plaintiffs sought to have disgorged. *Id.* The court explained that in such an action, the remedy is measured "by the defendant's gain" and the claim "seeks to force disgorgement of that gain. It differs in its goal or principle from damages, which measures the remedy by the plaintiff's loss and seeks to provide compensation for that loss." *Id.*

The claims in *Microsoft* differ from today's claim in two material ways. One, as explained, Ohio law allows plaintiffs to bring their unjust enrichment claims as an alternative, not in addition, to their compensatory damages contract claim. Two, plaintiffs here sought "disgorge[ment of] all amounts *received* as a result of charging for calls that were not answered or were busy," JA 66 (emphasis added), not "unlawfully obtained *profits*," *In re Microsoft Corp. Antitrust Litig.*, 127 F. Supp. 2d at 719 (emphasis added); *see Natale v. Pfizer Inc.*, 379 F. Supp. 2d 161, 180 (D. Mass. 2005) (distinguishing *In re Microsoft* on the ground that plaintiffs' complaint demonstrated that they

sought "disgorgement of the benefit conferred upon [defendant] by . . . the class members, not the disgorgement of all profits"). Accordingly, whether or not we would embrace the *Microsoft* analysis in the first instance, the fact remains that it is materially distinguishable from this case.

*In re Cardizem CD Antitrust Litigation*, 90 F. Supp. 2d 819 (E.D. Mich. 1999), also does not sway us. Prescription drug manufacturers allegedly "violated various state antitrust and related laws" by "effectively prevent[ing] any lower-cost generic version of a prescription heart medication, known as Cardizem CD, from entering the United States marketplace." *Id.* at 822. Here, too, the claim for disgorgement was "in addition to and separate from individual claims for compensation," *id.* at 826, distinguishing the case from a situation like this one where each plaintiff-customer has an individual contract with his cell phone provider and seeks legal or equitable relief based on the failure to honor his contract, *see Alinsub v. T-Mobile*, 414 F. Supp. 2d 825, 831 (W.D. Tenn. 2006).

The company fares no better when it invokes the observation in *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir. 1983), that "[a]n identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." As we have convincingly noted in an unpublished opinion, "*Sellers* holds only that the possibility of enhanced recovery by some plaintiffs is necessary, but not alone sufficient, for determining that plaintiffs have a common and undivided interest in a fund." *Durant v. Servicemaster Co.*, 109 Fed. Appx. 27, 30 (6th Cir. 2004). Even if this suit, like "[m]ost class actions," were to "result in some unclaimed funds," *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990), the court would not necessarily distribute the unclaimed funds among the other class members. The funds could be distributed to the government or to the defendants. *See id.*

But even if a class member dropped out and even if that increased the remaining plaintiffs' recoveries, the argument that disgorgement "would produce a common fund in which all class members would have a common and undivided interest" "proceeds from the wrong point: the disgorgement of the payments to create the 'fund.' Such a 'fund' is created to facilitate the litigation process in virtually every class action, and has nothing necessarily to do with whether the plaintiffs shared a pre-existing (pre-litigation) interest in the subject of the litigation." *Gilman*, 104 F.3d at 1427. As in *Durant*, any such fund would only be "a vehicle for administering individual awards, not an indivisible res." 109 Fed. Appx. at 30. "Under the classic 'common fund' cases, what controls is the nature of the right asserted, not whether successful vindication of the right will lead to a single pool of money that will be allocated among the plaintiffs." *Gilman*, 104 F.3d at 1427. Calling "any recovery that a class might win a 'fund' to which the class plaintiffs are jointly entitled is merely added verbiage. There is no fund. The claim remains one on behalf of separate individuals for the damage suffered by each due to the alleged conduct of defendant." *Id.* (internal quotation marks, ellipses and citation omitted); *see also Hilliker*, 112 F.2d at 384 ("The contention that the funds sought to be recovered will constitu[t]e a trust fund for the benefit of all creditors of the bank does not permit aggregation.").

B.

Dobson Cellular offers an alternative ground for removing the case to federal court, one that the district court did not reach, namely that the punitive damages may be aggregated to satisfy the amount-in-controversy requirement. While an individual's request for punitive damages of course may satisfy the amount-in-controversy requirement, *Klepper v. First Am. Bank*, 916 F.2d 337, 341 (6th Cir. 1990), the parties agree that each class member could not plausibly have recovered $75,000 apiece in punitive damages. As with the disgorgement claim, then, satisfaction of the amount-in-controversy requirement turns on whether the district court could aggregate the claims.

While our circuit has not resolved this issue, several other circuits have done so—all in the same way. The total amount of punitive damages sought in a multi-claimant case, they have concluded, may not be aggregated because plaintiffs generally have an individual right, not a collective entitlement, to them unless the underlying claim (unlike here) involves a joint or common interest. *See Crawford v. F. Hoffman-La Roche Ltd.*, 267 F.3d 760, 765 (8th Cir. 2001); *In re Ford Motor Co./Citibank*, 264 F.3d 952, 963 (9th Cir. 2001); *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1292–93 (10th Cir. 2001), *aff'd on other grounds*, 126 S. Ct. 704 (2005); *H&D Tire & Automotive-Hardware, Inc. v. Pitney Bowes, Inc.*, 250 F.3d 302, 304–05 (5th Cir. 2001); *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1076 (11th Cir. 2000); *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 609 (7th Cir. 1997); *Gilman v. BHC Sec., Inc.*, 104 F.3d 1418, 1430 (2d Cir. 1997).

We can think of no good reason for charting a different path. When juries (or courts) award punitive damages, "the resulting fund [is] not . . . a piece of property to which the plaintiffs [have] undivided rights." *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d at 608. And while "the putative class members may indeed share an interest in receiving damages, . . . that has nothing to do with whether—prior to litigation—they jointly held a single title or right in which each possessed a common and undivided interest." *Gilman*, 104 F.3d at 1430; *see also Durant*, 109 Fed. Appx. at 30 (noting that plaintiffs generally "may [not] aggregate claims for punitive damages").

Unlike a dispute over a single piece of property, moreover, punitive damages are not invariably a one-shot deal; in many settings, defendants may be subjected to multiple liability for punitive damages in successive claims by different plaintiffs. "One feature of 'common and undivided' interests in a single title or indivisible res is that the rights to such interests cannot be determined without implicating the rights of every other person claiming a similar entitlement. Manifestly, punitive damages do not work that way" because "punitive damage claims entail the potential for multiple liability." *Gilman*, 104 F.3d at 1430; *see also In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d at 608–09 ("A plaintiff's award of punitive damages is not limited by awards made to previous plaintiffs complaining of the same act of the defendant. This rule . . . shows that the right to punitive damages is a right of the individual plaintiff, rather than a collective entitlement of the victims of the defendant's misconduct.") (citations omitted). Because the "putative class members could sue separately for punitive damages, and, whether they prevailed on the merits or not, whether they were awarded punitive damages or not, the rights of subsequent plaintiffs would remain unaffected," "[p]unitive damages claims . . . cannot be deemed the type of single, indivisible res in which . . . multiple plaintiffs share a common and undivided interest that justifies aggregation." *Gilman*, 104 F.3d at 1430 (citations, brackets and internal quotation marks omitted). In the final analysis, multiple plaintiffs may not aggregate punitive damages to meet the amount-in-controversy requirement when they do not share a "joint or common interest or title" in the suit. *Snyder*, 394 U.S. at 337.

C.

Dobson Cellular offers one more theory for removing this case to federal court, one that the district court also did not reach, namely that the monetary cost of complying with plaintiffs' request for injunctive relief satisfies the amount-in-controversy requirement. Plaintiffs' complaint requested "equitable and injunctive relief enjoining the Defendants from misrepresenting that they do not charge for calls that are not answered or are busy." JA 66. As the phone company sees it, this relief would require the defendants to "change their advertisements, their contracts, and their other written materials and their billing practices on a nationwide basis," and Dobson Cellular contends that "[a]ltering their billing practices alone would have required a complete overhaul of Defendants' computer billing systems" and that they would "have been required to amend and reprint 'millions'

of contracts," which "[e]ven at a minimal cost, . . . would have cost Defendants well in excess of $75,000."  Dobson Br. at 29.

In one sense, Dobson Cellular is right.  The costs of complying with an injunction, whether sought by one plaintiff or many plaintiffs, may establish the amount in controversy.  *See Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 181 (1936).  The problem is how to calculate that cost—whether from the perspective of the monetary value of the relief to the plaintiffs (which will generally be modest) or the monetary value of the relief to the defendant (which may be great in some cases).  As we recently observed, the question poses a "jurisdictional morass" because "there is a circuit split as to whether a court may determine the amount in controversy from the perspective of either party (the 'either viewpoint rule') or whether a court may only consider the plaintiff's viewpoint."  *Olden v. Lafarge Corp.*, 383 F.3d 495, 503 n.1 (6th Cir. 2004).

As in *Olden*, we need not resolve the question today.  Even if we were to apply the "either viewpoint" approach, the more generous of the two from the defendant's perspective, Dobson Cellular has not satisfied a precondition for invoking the theory here.  "A defendant desiring to remove a case has the burden of proving the diversity jurisdiction requirements" by a preponderance of the evidence, *Gafford*, 997 F.2d at 155, and Dobson Cellular has not met this requirement.

Dobson Cellular points to no place in the record estimating the costs of compliance.  It suggests that the defendants would have had to change their advertisements, but it does not detail why or how.  It offers no evidence of advertisements by the defendants that they did not charge for no-answer or busy-signal calls.  And it does not explain why removing a misrepresentation or adding a disclaimer in an advertisement would cost a great amount.  It provides no details about the defendants' billing practices, and thus has not shown why a "complete overhaul" of them would be needed and what it would entail.  And it has not proved the necessity of reprinting millions of contracts and why it could not include this information on the materials it already prints and mails (or e-mails) to customers each month.  While Dobson Cellular need not show "to a legal certainty that the amount in controversy met the federal requirement," it must do more "than show[] a mere possibility that the jurisdictional amount is satisfied."  *Id.* (footnote omitted); *see also In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d at 610 ("The defendants have made no effort to show that what is conceivable is also probable by quantifying the internal cost of compliance to each of them.").  On this record, Dobson Cellular has not satisfied a threshold requirement for invoking this theory of federal-court jurisdiction.

III.

For these reasons, we reverse the district court's denial of the plaintiffs' motion to remand the case to state court, vacate its subsequent orders for lack of jurisdiction and remand the case with instructions to grant the remand motion.