**Rachel LESSARD, et al., Plaintiffs,**

v.

**CITY OF ALLEN PARK,
et al., Defendant.**

**No. CIV. 00–74306.**

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 10, 2007.

Peter W. Macuga, II, Steven D. Liddle, Detroit, MI, for Plaintiff.

Kenneth A. Slusser, Johnson, Rosati, Farmington Hills, Kurt M. Brauer, R. Craig Hupp, Bodman, Longley, Detroit, MI, Geoffrey H. Seidlein, Stacey L. Hissong, Thomas A. Bengtson, Hubbard, Fox, Lansing, MI,for Defendant.

*ORDER TO SHOW CAUSE WHY A CY PRES DISTRIBUTION OF UN-CLAIMED FUNDS SHOULD NOT BE MADE*

FEIKENS, District Judge.

In March of 2006, I authorized distribution of settlement funds to Plaintiffs. Seven Plaintiffs failed to cash their checks or respond to a court request that they contact their attorney to arrange for them to claim their funds. This leaves a small amount of unclaimed funds in the settlement account. I ORDER that any party objecting to the distribution of the unclaimed settlement funds to the Access for Justice Fund of the Michigan State Bar show cause on or before January 31, 2007 why such a distribution should not be made.

## BACKGROUND

On March 10, 2006, I authorized distribution of settlement funds to Plaintiffs in this matter in accordance with the Special Master's determinations. As of September 30, 2006, the settlement account had a balance of just under $45,000, which was a result of nine checks that had not been cashed,[1] plus some interest that had accrued. (Special Master's Report, Docket No. 256.) In November, I wrote to all nine of the recipients of uncashed checks, giving them until December 22, 2006 to make a claim in writing. Two of the letters, to claimants Smith and Haystead, were returned to this Court as undeliverable at the addresses those individuals had provided. Two other checks were reissued to claimants Lenard and McCurry. The remaining claimants made no response. All of the remaining claimants have Wayne County addresses.

The settlement fund currently holds the unclaimed amounts plus interest that has been generated since the initial distribution.

## ANALYSIS

 The settlement agreement specified that this Court would retain jurisdiction to solve "any dispute regarding the distribution." (Settlement Agreement ¶ 30(b); ¶ 36.) Neither the settlement agreement nor the order regarding distribution contained terms specifying how any unclaimed or excess funds would be distributed.[2] Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds.[3] *Van Gemert v. Boeing Co.,* 739 F.2d 730, 737 (2d Cir.1984); *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1307 (9th Cir.1990), cited approvingly by *Everett v. Verizon Wireless, Inc.,* 460 F.3d 818, 827 (6th Cir.2006). The court's choice among distribution options should be guided by the objectives of the underlying statute and the interests

---

1. There were more than 3,100 claimants, so this is an extremely small fraction of Plaintiffs.

2. The Order that established procedures for the administration of settlement, in a section regarding how the reserve funds for opt-out Plaintiffs would be distributed, noted that "any remaining settlement funds, after final expenses of administration, shall be distributed to the claimants listed on the Final Distribution List using the same fraction as used in the initial distribution." (¶ 3(1).) This section applied only to the handling of any reserve funds for opt-outs, and not to a final unclaimed balance.

3. The Supreme Court has specifically declined to rule on the question of what happens to unclaimed funds in a class action. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 482, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) ("The Court of Appeals did not consider the ultimate disposition of whatever money may remain in the fund after the District Court enforces a deadline for the presentation of individual claims. [Citation omitted.] We likewise express no opinion on that question.")

of the silent class members. *Six Mexican Workers*, 904 F.2d at 1307. There are other factors that courts have taken into account, including the proportion of class members sharing in the recovery, the costs of administration, and any "spill over" benefits to non-class members. *State v. Levi Strauss & Co.*, 41 Cal.3d 460, 473, 224 Cal.Rptr. 605, 715 P.2d 564 (Cal.1986), citing Shepherd, *Damage Distribution in Class Actions: The Cy Pres Remedy*, 39 U.Chi. L.Rev. 448, 464 (1972). In general, if the unclaimed funds are not directed to one party or another, they are distributed *"cy pres"*—i.e., to whatever would be the next best use of the money to carry out the intent of the fund, which in class actions usually means for the indirect benefit of the class. *Newberg on Class Actions*, § 10:16 n. 1.

## A. Distribution to the Parties

In this case, it does not make sense to direct the unclaimed funds to the parties. Given the administrative costs involved with a second round of payments to all claimants, and the small amount of funds involved ($44,000 distributed to more than 3,100 Plaintiffs), there would be little benefit to the Plaintiff class of attempting a second distribution of the unclaimed funds.[4]

Although the Sixth Circuit has also cited the possibility of returning unclaimed funds to the defendants of class action suits, and other courts have sought to do so absent a statutory desire for deterrence, that is not appropriate here. *Everett*, 460 F.3d at 827, citing *Six Mexican Workers*, 904 F.2d at 1307, citing *Newberg on Class Actions* § 10.17 at 373–74. First,

in order to have the checks issued, there was a requirement that damages be demonstrated by Plaintiffs, which was done. This means that unlike in other cases, Plaintiffs offered documentation of far more damages then the fund could allay. This is not a situation in which the unclaimed funds indicate the likelihood of smaller damages among the class than was originally contemplated, which underpins the rationale of returning monies to Defendants. Therefore, returning the funds to Defendants is not appropriate here.

■ As distribution to Plaintiffs is not feasible, and the usual rationale for returning monies to Defendants does not apply in this case, a *cy pres* distribution is appropriate. *Newberg on Class Actions*, § 10:16 n. 1.

## B. *Cy Pres* Distribution

Courts have generally looked favorably on distributions to charities that offer services that are related to the plaintiffs of a class action. *See, e.g., Rodriguez v. Berrybrook Farms, Inc.*, Case No. K86–161 CA8, 1990 U.S. Dist. LEXIS 14646, *8–9 (W.D.Mich. Oct. 29, 1990), citing *Six Mexican Workers*, 904 F.2d at 1309 (9th Cir. 1990). A common type of charity selected as the recipient of unclaimed funds is a fund that provides legal services to low-income individuals, like the Michigan Bar's Access to Justice Fund. (Vauter, Bradley A., *The Next Best Thing*, Michigan Bar Journal (July 2001, p. 68–69).) The Access to Justice fund is the "next best" use of the remaining settlement monies in this case, because both class actions and Access to Justice programs facilitate the supply of legal services to those who cannot

---

**4.** Claimants received settlement funds in proportion to their loss, and the majority of claims were for comparatively small amounts. Therefore, the distribution would likely result in a large number of checks for amounts less than the administrative costs of preparing them. In addition, such an attempt at distribution would almost certainly result in yet another unclaimed amount, requiring yet another distribution of an even smaller amount.

otherwise obtain or afford representation in legal matters. (State Bar of Michigan, *Access to Justice, Cy Pres, and Other Litigation Settlements Manual,* p. 16 (2005).) Additionally, the Michigan State Bar can geographically tailor the award to more closely fit the Plaintiff class, which in this case, would mean restricting the funds to help individuals in Wayne County. *Id.*

**CONCLUSION**

Any objection to a *cy pres* distribution of the remaining settlement funds to the Michigan Bar's Access for Justice Fund, for the benefit of those in Wayne County, must be made on or before January 31, 2007.

**IT IS SO ORDERED.**