NOT RECOMMENDED FOR PUBLICATION
File Name: 16a0578n.06

No. 16-5276

**FILED**
Oct 24, 2016
DEBORAH S. HUNT, Clerk

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MARLENA ALDRICH; KRISTIN NOLAN, | ) | |
| | ) | |
| Plaintiffs – Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| UNIVERSITY OF PHOENIX, INC., | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| Defendant – Appellee. | ) | |
| | ) | |
| | ) | |

BEFORE:   MERRITT, ROGERS, and KETHLEDGE, Circuit Judges.

ROGERS, Circuit Judge.   After losing their jobs with the University of Phoenix, plaintiffs filed suit in state court, alleging separate claims for wrongful termination and for uncompensated overtime hours.  For the overtime-compensation claims only, plaintiffs sought to represent a class of employees who were similarly uncompensated.  The university removed the case to federal court, and the district court dismissed the case without prejudice on the ground that plaintiffs were required to arbitrate their claims under the university's standard arbitration policy.  On appeal, plaintiffs argue that removal was improper because (1) the removed action included class claims but the notice of removal did not specifically rely on supplemental jurisdiction, and (2) in any event removal was improper where the basis for removal included supplemental jurisdiction over the overtime class claims but the named plaintiffs' overtime claims did not meet the amount-in-controversy requirement without taking into account the

named plaintiffs' other (wrongful termination) claims as well. However, neither argument has merit, and removal was therefore proper. Plaintiffs also argue that the district court should not have compelled them to arbitrate because there was a genuine dispute of material fact as to whether they signed the relevant form acknowledging the university's arbitration agreement. However, this argument also lacks merit, because the plaintiffs demonstrated assent to the arbitration agreement under Kentucky law by continuing to work at the university, whether or not they signed the acknowledgment form.

**I.**

Marlena Aldrich and Kristen Nolan, the named plaintiffs in this case, began working for the University of Phoenix in October 2005 and July 2006, respectively. Aldrich was a National Defense Liaison (NDL), and Nolan was an NDL Manager. In these jobs, plaintiffs were responsible for recruiting service members and veterans to attend the university.

Plaintiffs allege that they were wrongfully terminated on account of their refusal to engage in unfair, deceptive, and fraudulent recruitment practices. They allege that they were instructed to misrepresent the university's educational quality in order to entice service members and veterans to enroll in the university. Plaintiffs claim that when they refused to engage in the deceptive practices, they missed their recruitment goals and were let go.

Plaintiffs also state that they, as well as all current and former employees of the university, were consistently denied overtime payments in violation of Kentucky law. They further claim that the university's recordkeeping regarding their overtime hours violated Kentucky law. According to plaintiffs, the university's failure to pay them wages they were due upon termination was also a violation of Kentucky law. Because plaintiffs allege that the

overtime-compensation violations are common to all current and former employees who performed duties in Kentucky, they asserted this claim as a class action.

In response to these claims, the university removed the case to federal court. According to the notice, the class-action claim arises under "KRS § 337, *et seq.*" The university also stated in the notice that the district court "has jurisdiction over this action pursuant to 28 U.S.C. § 1332 by reason of complete diversity jurisdiction of the parties." After noting that there is complete diversity of citizenship, the university stated that plaintiffs' claims exceed $75,000 as required by § 1332. In the twelfth paragraph of the notice, the university claimed that "[t]he amount in controversy requirement is further met by Plaintiffs' seeking overtime compensation, civil penalties, and liquidated and punitive damages." Nowhere in the notice did the university cite 28 U.S.C. § 1367, the statute covering supplemental jurisdiction.

Plaintiffs filed a motion to remand the case to state court. In the motion to remand, plaintiffs argued that because the university failed to list 28 U.S.C. § 1332(d) (i.e., the Class Action Fairness Act) as a basis for removal, the notice of removal was defective. Plaintiffs further argued that the district court could not sever the class action claims to preserve jurisdiction over the individual claims. Plaintiffs contended that the named parties had not each met the $75,000 amount in controversy requirement, stating that: "[b]ecause [the university] does not assert supplemental jurisdiction it must separately meet the . . . amount in controversy requirement of [§] 1332(a)." The university addressed these arguments in its response to the motion to remand, explaining that CAFA does not preclude pre-existing diversity jurisdiction based on complete diversity and contending that the named plaintiffs' claims exceeded the $75,000 threshold. In reply to this response, plaintiffs argued that the lack of an explicit reference to supplemental jurisdiction rendered the notice of removal defective. Because this

argument had not been previously presented in a thorough manner, the district court permitted the university to file a surreply. In the surreply, the university argued that the notice of removal need not explicitly refer to supplemental jurisdiction, because the removal statute only requires a "short and plain statement" as to the basis of removal.

The district court denied the motion to remand. According to the district court, the notice of removal sufficiently alleged that the amount in controversy was satisfied because a single plaintiff is allowed to aggregate his or her claims to reach the threshold. The district court also reasoned that supplemental jurisdiction was available for the class members. The court first stated that the university did not have to cite supplemental jurisdiction in the notice of removal. The court then stated that it could "easily gather from the face of the [n]otice of [r]emoval that" supplemental jurisdiction was invoked. The district court held that the removal was thus proper and denied the motion to remand.

The university then filed a motion to dismiss and compel arbitration. During the course of plaintiffs' employment, they received the university's employee handbook, which included an arbitration provision. A version of the handbook distributed in 2012 required an official acknowledgement from the employees upon their receipt of the handbook.

Lynette Tartaglio, an HR Director for the university's parent company, stated in an affidavit that all employees of the university received an email "[o]n or around November 14, 2012" notifying the employees that the handbook had been updated, containing a link to an electronic copy of the new handbook, and requesting that they electronically acknowledge the new handbook within thirty days. The email, according to Tartaglio, instructed the employees to visit their MyHR (an HR-related intranet) page to complete the electronic acknowledgement

form, and the message provided a link to the MyHR page. Each MyHR page is password protected, and the employee chooses the password.

According to the university's records, both plaintiffs completed the acknowledgement form. The university's records show that Aldrich completed the form on November 14, 2012, and that Nolan completed the form on December 27, 2012. The form included a link to the updated handbook so the employees could read and understand the contents of the arbitration agreement. The form also included a statement that the signatory understood and affirmed that both the signatory and the company would "arbitrate employment-related legal claims." *Id.* The arbitration agreement contained in the handbook detailed the process for the resolution of any complaints through arbitration, and it also contained a class-action waiver. After their alleged execution of the acknowledgement forms, plaintiffs continued working as recruiters for the university.

Plaintiffs launched a number of challenges in response to the university's motion to dismiss and compel arbitration, arguing among other things that public policy reasons counsel against enforcing the arbitration provision here, that the university lacked standing to enforce the arbitration provision in the acknowledgment form, that the acknowledgement form was not a contractual agreement, and that plaintiffs never received or signed the acknowledgement form.

The district court granted the university's motion to dismiss and compel arbitration. First, the court found plaintiffs' public policy argument unpersuasive because plaintiffs did not support the argument with any caselaw. Second, the court held that cases from both federal and Kentucky courts support the acknowledgement form's being a contractual agreement, and that plaintiffs provided no contrary authority. The court then addressed plaintiffs' standing argument, reasoning that the university was included in the agreement's definition of "the Company" and

therefore had standing, and that in any event the university could enforce the arbitration agreement as a subsidiary and agent of its parent.

The district court also disposed of plaintiffs' contract arguments. The court held that, under Kentucky law, the agreement need not be signed in order to be valid and enforceable. Continued employment was sufficient. Further, the court held that because both parties agreed to arbitrate claims in lieu of filing lawsuits, and because plaintiffs remained in employment, there was sufficient consideration to support a contractual agreement. As to plaintiffs' argument that they never received or signed the acknowledgement form, the court held that plaintiffs cited no evidence (other than their own affidavits) disputing the university's evidence, and there was therefore no dispute of material fact entitling plaintiffs to a jury trial on the issue. Further, because plaintiffs continued working after the distribution of the arbitration agreements, the court held that they had assented to the agreements.

The court lastly addressed a class-action waiver provision contained in the arbitration agreement. The court held that because the arbitration agreement was valid, the waiver provision was likewise valid, and plaintiffs could not pursue their claims as a class action. The court thus granted the university's motion and dismissed the suit without prejudice, pending arbitration.

Plaintiffs appeal the district court's denial of their motion to remand as well as the district court's dismissal of their claims. Plaintiffs argue that the district court lacked jurisdiction, as the notice of removal was deficient. They also argue that there can be no supplemental jurisdiction over the class members' claims, where although plaintiffs' various claims exceed $75,000, the one claim that is the asserted basis for supplemental jurisdiction does not by itself exceed that amount. Plaintiffs further assign error to the district court's deeming the executed

acknowledgement form a valid and enforceable arbitration agreement, because they assert that their affidavits are sufficient to get them to a jury trial on the issue.

## II.

The district court properly exercised jurisdiction over the case. The university satisfied its burden of providing a "short and plain statement" with regard to jurisdiction and removal. 28 U.S.C. § 1446(a). The university, in its notice of removal, stated that the district court "has jurisdiction over this action pursuant to 28 U.S.C. § 1332 by reason of complete diversity jurisdiction of the parties." There is no contention that the named plaintiffs' claims fall outside of § 1332. The notice of removal also contains an allegation as to the amount in controversy, and it states that the class-action claims are based on identical Kentucky statutes. From this, as the district court stated, a court can easily gather that the claims of the class members, if not falling under the court's § 1332 diversity jurisdiction, would fall under the court's § 1367 supplemental jurisdiction as being part of the same case. The fact that the named plaintiffs wished to represent the other plaintiffs as a class indeed showed the court that they were similarly situated to the unnamed parties. *See* Fed. R. Civ. Pro. 23.

Plaintiffs' argument that the notice of removal must contain an explicit reference to supplemental jurisdiction runs contrary to both precedent and the rules governing federal practice. Plaintiffs cite *Geismann v. Aestheticare, LLC*, 622 F. Supp. 2d 1091, 1093 (D. Kan. 2008), and argue that because "[r]emoval statutes are strictly construed and the [c]ourt resolves all doubt against the removal," the notice of removal here was required to contain an allegation of supplemental jurisdiction. This argument is without merit. As we have stated, a party presenting a case in federal court does not need to plead the supplemental jurisdiction statute. *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 674 (6th Cir. 2005). Furthermore, the "short

and plain statement" standard required for removal "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014). Under Rule 8(a), "[a] jurisdictional basis need not be pleaded to establish supplemental jurisdiction over a claim where the court's jurisdiction over the primary claim has been established." 61A Am. Jur. 2d, Pleading § 170 (2016). Plaintiffs' argument that the notice of removal was deficient due to its lack of an explicit reference to supplemental jurisdiction is accordingly unfounded.

Plaintiffs attempt to distance the present case from these authorities, but their attempt falls short. They argue that the present case is distinguishable from *Voyticky* (and other cases the district court cited) because it is a "pendent party" case rather than a "pendent claim" case. But that distinction is not meaningful with regard to this issue. Indeed, plaintiffs cite no authority supporting any significance this distinction might have. Moreover, 28 U.S.C. § 1367, the supplemental-jurisdiction statute, does not make a distinction between the two. Because the distinction exists only in the abstract sense, plaintiffs' argument fails.

The district court's exercise of supplemental jurisdiction over the claims of the class members was also proper notwithstanding plaintiffs' argument that the individual claim serving to warrant supplemental jurisdiction must separately meet the amount in controversy requirement. Under § 1367(a), "the district courts shall have supplemental jurisdiction over all . . . claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The district court in this case had original jurisdiction over the named plaintiffs' claims: the notice of removal alleged that the parties were completely diverse, and that the claims satisfied the amount in controversy requirement by exceeding $75,000. Even if the

overtime-compensation claims alone did not satisfy the amount in controversy requirement,[1] a single plaintiff "may aggregate the value of her claims against a defendant to meet the . . . requirement," *Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006). Plaintiffs do not challenge the fact that the claims of either named plaintiff, when aggregated, exceed the required threshold. Thus, because there was complete diversity as well as an amount in controversy over $75,000, the district court had original jurisdiction over the named plaintiffs' claims pursuant to § 1332. With the overtime-compensation claim being one of the two claims over which the district court had original jurisdiction, attaching the related claims of the class members was an appropriate exercise of the district court's supplemental jurisdiction.

The plain language of § 1367 supports this conclusion. That statute states that a district court has original jurisdiction over an "action," and claims make up the "action." 28 U.S.C. § 1367(a). Supplemental jurisdiction is for other claims related to the claims in the "action." *Id.* Thus, for the purposes of § 1367, a district court has original jurisdiction over an entire case, not on a claim-by-claim basis. When the court appropriately exercises original jurisdiction over an action, claims that are related to the claims making up that action can be added to the suit under § 1367. Thus, here, the aggregation of the overtime-compensation claims and the wrongful-termination claims gave the district court original jurisdiction over the named plaintiffs' entire action. Any claims related to the overtime-compensation claim, such as those of the class members, are properly included within the court's supplemental jurisdiction under § 1367.

*Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546 (2005), is not in tension with this conclusion—in fact, it is supported by the reasoning in that case. Plaintiffs argue that

---

[1] It appears that they did. In paragraph twelve of the notice of removal, the university stated that the named plaintiffs' overtime-compensation claims met the amount in controversy requirement. The university thus alleged that the district court had original jurisdiction over the wage and hour claims of the named plaintiffs, and the class members' claims were alleged under the same statute as the named plaintiffs', making them the "same case or controversy."

*Exxon Mobil* established an "anchor claim" theory for supplemental jurisdiction, under which a party seeking to tack on claims under § 1367 must first have alleged a *single* claim falling under the court's original jurisdiction. In *Exxon Mobil*, at least one claim independently established original jurisdiction. 545 U.S. at 551. The Court stated:

> When the well-pleaded complaint contains at least one claim that satisfies the amount-in-controversy requirement, and there are no other relevant jurisdictional defects, the district court, beyond all question, has original jurisdiction over that claim. The presence of other claims in the complaint, over which the district court may lack original jurisdiction, is of no moment. If the court has original jurisdiction over a single claim in the complaint, it has original jurisdiction over a "civil action" within the meaning of § 1367(a). . . . Once the court determines it has original jurisdiction over the civil action, it can turn to the question whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over the other claims in the action.

*Id.* at 559. Drawing upon this language, plaintiffs argue that the *Exxon Mobil* Court laid out a rule precluding supplemental jurisdiction when claims must be aggregated to invoke a court's original jurisdiction. But *Exxon Mobil* contained no such rule. That case did not involve aggregation of claims. In fact, the thrust of *Exxon Mobil* supports the district court's exercise of jurisdiction in this case: when a court has original jurisdiction over a claim or claims, supplemental jurisdiction is properly exercised over related claims that fail to meet original-jurisdiction requirements. Plaintiffs stretch the words and holding of *Exxon Mobil* too far in their attempt to cover the present case.

## III.

The district court also properly dismissed the case pending arbitration, because there is no genuine issue of material fact over whether plaintiffs agreed to the university's arbitration policy. Under the Federal Arbitration Act, if a court finds that the existence of an arbitration agreement is "in issue," it must proceed to trial and cannot grant a motion to compel arbitration. 9 U.S.C. § 4. An agreement's validity is "in issue" when "the party opposing arbitration . . . show[s] a

genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002); *see Tinder v. Pinkerton Security*, 305 F.3d 728, 735 (7th Cir. 2002). State law—here, Kentucky law—governs whether a contract was formed. *See Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir. 2003). Under Kentucky law, an employee can be bound by an arbitration agreement, even without a signature, when he or she demonstrates acceptance of the agreement by continuing to work for the employer. *Braxton v. O'Charley's Rest. Props., LLC*, 1 F. Supp. 3d 722, 727 (W.D. Ky. 2014); *Spears v. Carhartt, Inc.*, 215 S.W.3d 1, 9 (Ky. 2006); *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354, 362 (Ky. 2005). The university's 2012 employee handbook states that acceptance of the agreement "is a condition of employment at the Company." Despite this condition, the plaintiffs continued to work for the university for the better part of two years after the handbook and the policies contained therein were promulgated. Furthermore, while the plaintiffs deny that they received the acknowledgment form, that the acknowledgment form was available on their MyHR page, and that they electronically signed the acknowledgment form, there was no dispute before the district court that the plaintiffs received the handbook. Thus, the plaintiffs had notice of the arbitration agreement. In sum, there is no genuine issue of material fact that the plaintiffs accepted the arbitration agreement, if only by continuing to work at the company.

Plaintiffs filed affidavits asserting that they never received the acknowledgment forms, that the acknowledgment forms were not available on their MyHR pages, and that the acknowledgment forms were not interactive, such that they could not have been signed. Plaintiffs argue that these affidavits contradict the university's evidence that they did sign the acknowledgment forms: an affidavit by a university official stating that the plaintiffs were sent an e-mail with instructions to sign the acknowledgment form, as well as acknowledgment forms

that were electronically signed by both employees. Therefore, according to plaintiffs, there is a genuine issue of material fact that should be submitted to a jury. However, as explained above, under Kentucky law the plaintiffs agreed to the arbitration agreement when they continued to work at the university. Therefore, the acknowledgment forms are not necessary to show the plaintiffs' assent, and this court need not decide whether these forms present a genuine issue.

Plaintiffs cite *Venters v. Stewart*, 261 S.W.2d 444 (Ky. 1953), for the proposition that when an offer contains the means of acceptance then the stated means of acceptance is the only way to accept. However, *Venters* contains no such holding. That case merely held that under Kentucky law, if there is an express condition that must be satisfied before a contract can become binding, the failure to satisfy that condition results in a lack of acceptance. *Id.* at 445–46. Here, the acknowledgement form did not state that clicking "accept" was the *only* way that employees could assent to the arbitration agreement. There was no explicit condition that had to be satisfied prior to the agreement's being made. *Venters* is thus inapposite, and plaintiffs' continued employment at the university constituted acceptance under Kentucky law.

Finally, Plaintiffs challenge the validity of the arbitration agreement on the ground that the agreement lacked consideration, but this argument is unavailing. According to the arbitration provision in the acknowledgement form, plaintiffs and the university mutually "agree[d] to arbitrate [their] employment-related legal claims against" each other. Both parties thus gave up their rights to have disputes settled in court. "Clearly, the forbearance of a right to sue is valid consideration to support a promise." *Alvey v. Union Inv., Inc.*, 697 S.W.2d 145, 148 (Ky. Ct. App. 1985). Plaintiffs attempt to argue, without citing authority, that the university's forbearing its right to sue does not rise to the level of consideration, because arbitration benefits the university. However, this argument is without merit, because—although it is often the case—it

is not always true that arbitration benefits the employer. Because both parties to the agreement here forbore their rights to sue, consideration existed under Kentucky law. Moreover, plaintiffs continued acceptance of at will employment constitutes consideration under Kentucky law. *Higdon Food Service, Inc. v. Walker*, 641 S.W.2d 750, 751 (Ky. 1982); *Thomas and King, Inc. v. Jaramillo*, No. 09-191-JBC, 2009 WL 649073 at *6-7 (E.D. Ky. 2009) (applying Kentucky law to hold that continued employment was sufficient consideration for an arbitration agreement).

## IV.

The district court's judgment is accordingly affirmed.